1:22 MJ 4153

# AFFIDAVIT IN SUPPORT OF
# A CRIMINAL COMPLAINT

I, Nicola Fabrizio, Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), herein after referred to as Affiant, being duly sworn, do hereby depose and state as follows:

## Affiant's Background and Qualifications

1. Affiant is a duly sworn Special Agent (SA) of the ATF. As such, Affiant is empowered to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code that is, a Special Agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. Affiant has been involved in the investigation of various individuals and organizations involved in the illegal manufacturing, distribution, and use of controlled substances and firearm violations. Affiant has conducted surveillance operations and has become familiar with the methods used by individuals engaged in the illegal manufacturing, distribution, and use of controlled substances and firearm violations. Affiant has been lead investigator or has participated in many criminal investigations involving violations of Federal drug and firearm laws. Affiant has executed search warrants related to illegal drug and firearm operations.

3. Based on Affiant's training and experience, as well as the training and experience of all involved law enforcement investigators contributing to the furtherance of this investigation, Affiant knows that while some drug traffickers attempt to keep their drug trafficking activities separate from their residences, many drug traffickers conduct their drug trafficking activities at locations where they reside and as a result retain evidence relating to drug trafficking therein. Regardless of where drug traffickers conduct their drug activities, drug traffickers typically keep records, papers, documents and other evidence of such trafficking

offenses at locations where the items can be readily accessed, to include the drug trafficker's place of residence.

4. Affiant also knows that the sale of illegal drugs is mostly conducted on a cash basis and that persons involved in the regular trafficking of drugs often maintain control over significant amounts of currency, as both "working capital" and as "profits", at their places of residence and/or other properties they control.

5. Drug traffickers commonly utilize vehicles to transport drugs and proceeds from drug sales, to include U.S. currency, between various locations. To avoid detection and confiscation, the vehicles used to transport both drugs and currency are often outfitted with hidden compartments designed to conceal the money or contraband.

6. Affiant knows that it is common for drug trafficking organizations ("DTOs") to use cellular telephone text messaging features to communicate with associates relating to the logistics of their drug trafficking business. Affiant is also aware that DTOs commonly use pre-paid telephones, which require little or no subscriber information, to avoid law enforcement detection and interception. Affiant knows that those involved in illegal drug operations or other criminal conduct use slang and/or coded language when communicating about drug matters.

7. Affiant is aware that individuals involved in drug trafficking often maintain records linking them to their trafficking activity and their drug trafficking associates. These records may include notes, records, or ledgers of drug sales, past or future shipments, and other records, including telephone records, which identify customers and/or other co-conspirators. These records may be stored physically or digitally on computers or other electronic devices or media. Affiant knows that drug traffickers often maintain such records at their place of residence

even when the residence is not being used to store drugs or to conduct drug sales or other drug activity.

8. Affiant's knowledge of the facts alleged in this affidavit are based on conversations with other law enforcement officers, including ATF agents/officers; information received from law enforcement databases; and from Affiant's personal participation in the investigation does not set forth all of my knowledge about this matter.

9. This Affidavit is being submitted for the limited purpose of securing establish probable cause in support of the Complaint against Darius **PAIGE**. Your Affiant has not included each and every fact known concerning this investigation; rather Your Affiant has set forth only those facts believed necessary to establish probable.

10. This Affidavit is offered in support of a Criminal Complaint against Defendant Darius **PAIGE** for the following offenses: Title 21 U.S.C. Sections 841(a)(1), 843(b) and 846, to wit: distributing and possessing with the intent to distribute controlled substances; use of a communication facility to facilitate a felony drug offense, and conspiracy to distribute and to possess with the intent to distribute controlled substances.

## PROBABLE CAUSE

11. Since February 2022, Agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and ATF colleagues in the narcotics law enforcement community have been investigating the drug trafficking activities of Darius **PAIGE**. **PAIGE** through information provided was identified as a known distributor and trafficker of fentanyl/heroin and methamphetamine. A review of the Cuyahoga County Court of Common Pleas Docket reveals **PAIGE's** criminal history to contain, but not limited to: CARRYING CONCEALED WEAPONS 2923.12 A (2), Docket# CR-16-602568-A (F4), POSSESSING CRIMINAL TOOLS 2923.24 A (M1) and OBSTRUCTING

OFFICIAL BUSINESS 2921.31 A (M2) DOCKET# CR-21-656063-B. ATF agents utilized an ATF Under Cover (UC) on multiple occasions to purchase fentanyl/heroin and methamphetamine from **PAIGE** within Cuyahoga County, Ohio area. Your Affiant and Affiant's colleagues in the narcotics law enforcement community have been receiving information regarding the drug trafficking activities of Darius **PAIGE** from the aforementioned CI which has been listed in this Affidavit. CI has multiple arrests and convictions for theft and receive stolen property. CI information has been corroborated to the extent possible by a debriefing of CI, and law enforcement surveillance.

12. In February 2022, ATF received information that **PAIGE** is distributing large quantities of heroin, fentanyl and methamphetamine. Further information was that **PAIGE** had multiple "trap" house locations[1] and utilizes the phone number 216-600-7665 herein after referred to as 216-600-7665. Investigators also learned the actual address of the trap house as 4225 E. 128th Street, Cleveland, OH. Your Affiant avers that **PAIGE** has been seen at this location.

13. ATF Task Force Officer Kopchak contacted the Cleveland Police 4th District Vice Unit and inquired about 4225 E. 128th Street. Cleveland Police 4th District Vice advised that that the Southeast Area Law Enforcement (SEALE) Task Force had an open case on the house. TFO Kopchak contacted Det. Stanton from the SEALE Task Force. Stanton identified **PAIGE** and described him as a black male, 6'4" 220, with a DOB 9/25/1992. Stanton stated that **PAIGE** was running with a crew that was selling large quantities of methamphetamine. SEALE executed several state side search warrants and found **PAIGE** to be in possession of one firearm along with a small amount of methamphetamine at 4237 E.126, Cleveland Ohio. SEALE executed two additional search warrants and seized six firearms. Detective Stanton stated they located numerous spent .556 caliber casings cartridge casings outside the residence.

---

[1] It is to be noted that a "trap" house can be referred to as a location where drug traffickers sometimes store their illegal narcotics, money and conduct the sale of narcotics. The CI provided 4225 E. 128th Street, Cleveland, OH.

14. On March 22, 2022, at approximately 9:55 p.m., Task Force Officer (TFO) Don Kopchak working in an undercover (UC) capacity made a recorded call to Darius **PAIGE** to discuss the purchase of 10 grams of fentanyl. **PAIGE** stated he would have to call the ATF UC back.

15. On March 23, 2022, **PAIGE** called the ATF UC via 216-600-7665 and stated the price for 10 grams of fentanyl is $850.00. This call was not recorded. Later that day, at approximately 1:15pm the ATF UC and SA Nicola Fabrizio made a recorded called to **PAIGE**. During the call, the ATF UC asked **PAIGE** where he should meet him. **PAIGE** told the ATF UC to go to Lee Road. **PAIGE** then told ATF UC to go to the Miles Avenue and "inaudible" (later learned to be HLAVIN Avenue). ATF UC was unable to understand **PAIGE**. **PAIGE** told ATF UC just to go to the Lee and Harvard Plaza (4071 Lee Road, Cleveland, Ohio). The call ends. The ATF UC sent a text message to **PAIGE** via 216-600-7665 to confirm the amount of 10 grams of fentanyl for $850.00. **PAIGE** responded "YEP". ATF UC also sent a text message to **PAIGE** via 216-600-7665 to confirm he was meeting PAIGE at the Lee and Harvard Plaza. **PAIGE** responded "YEP". The ATF UC met with the surveillance team members, at a predetermined location, to discuss the details of the transaction with **PAIGE.** The ATF UC was provided the pre-recorded government funds, along with audio and video recording devices to record the transaction. SA Nicola Fabrizio followed the ATF UC to 4071 Lee Road, Cleveland, Ohio (Lee and Harvard Plaza), where ATF UC parked in the lot. The ATF UC made a recorded call to **PAIGE** via 216-600-7665. The ATF UC told **PAIGE** that he is parked in the plaza. **PAIGE** informed the ATF UC that he was on his way. **PAIGE** called the ATF UC and told the ATF UC, "I'm in a white Honda". The ATF UC observed a white Honda pull into the parking lot with Ohio plate GJE-6626. **PAIGE** called the ATF UC back a few minutes later and told ATF UC, he could not find the UC. The ATF UC directed **PAIGE** to park next to him. The White Honda did one more lap and parked next to the ATF UC's vehicle. **PAIGE** told the ATF UC to get into his vehicle. Affiant further avers that the ATF UC entered the white Honda and PAIGE handed the ATF UC a bag that

5

contained suspected fentanyl, in exchange for the pre-recorded government funds. **PAIGE** counted the pre-recorded government funds and the UC and **PAIGE** engaged in general conversation. The ATF UC exited the white Honda and got back into the ATF UC's vehicle. Once the purchase was complete, **PAIGE** left the area, as a follow was attempted to be conducted, but due to **PAIGE's** erratic driving the Agents were unable to safely follow and still remain in an undercover surveillance capacity. The ATF UC departed the area and returned to the predetermined staging area followed by SA Fabrizio. The suspected heroin/fentanyl was transported to ATF Cleveland Field Office where it weighed approximately 10.6 grams and was entered into evidence. The purchased heroin/fentanyl was sent to the CCRFSL for further testing. Upon lab examination by the Cuyahoga County Medical Examiner's Office, the substance was fentanyl, and 4-ANPP. (CCFRSL Case#2022-002282-0002).

16. On March 23, 2022, at approximately 9:50 p.m., ATF UC made a recorded call to **PAIGE** and had a casual conversation about when **PAIGE** was expected to receive the next shipment of methamphetamine. **PAIGE** informed the ATF UC that he received some bad methamphetamine, and he did not want to give the ATF UC "Some bull shit" and that he "bleach tested" the methamphetamine. The "bleach test" is one way drug traffickers test methamphetamine. The concept is that the methamphetamine when mixed with the bleach causes a chemical reaction in which the purer the methamphetamine the more movement in the bleach. It is common for drug traffickers to test their product prior to selling/distributing to others to ensure the quality of the product is sufficient. The ATF UC asked **PAIGE** "If it is not moving its sinking (referring to the methamphetamine in the bleach). **PAIGE** responded, "Yep gotta get some bleach." **PAIGE** and the ATF UC engaged in casual conversation. **PAIGE** later informed the ATF UC that he will call him.

17. On March 27, 2022, the ATF UC was contacted by **PAIGE** via 216-600-7665 in regard to selling a half pound of methamphetamine. **PAIGE** stated to the ATF UC that he was in possession of ten (10) pounds of methamphetamine. During conversation, **PAIGE** informed the ATF

UC that he receives the methamphetamine via mail from Arizona and/or California. **PAIGE** then informed the ATF UC that a half a pound of methamphetamine would be $1,900. The UC informed **PAIGE** that he would have to get the money together. **PAIGE** told the UC to call him when he was ready.

    18.    On March 29, 2022, the ATF UC sent a text message to **PAIGE** on 216-600-7665:

- UC: Yo yo yo 1,900 right (referring to half pound of methamphetamine)
- **PAIGE**: YUP

    19.    UC attempted to call **PAIGE**. **PAIGE** called UC back, however UC was unable to understand what **PAIGE** was saying. UC engaged **PAIGE** in text message conversation.

- UC: Shitty reception hit me back im leaving d town
- UC: Hit you u when I touch down ad get this all together
- UC: Plan of hitting it big here fucking didbt(didn't) happen
- **PAIGE**: Im waiting on you bro.
- UC: Getting cash now bro my bad
- **PAIGE**: OK
- UC: Yo same spot
- **PAIGE**: Naw

    20.    On or about March 29, 2022, the ATF UC met with ATF surveillance team members at a pre-determined location to discuss the details of the pending controlled drug purchase with **PAIGE**. ATF UC was provided with $2,000 in pre-recorded funds to be used by the ATF UC to purchase methamphetamine from **PAIGE**. The ATF UC's vehicle was fitted with recording devices to capture the upcoming meeting with **PAIGE**. **PAIGE** called the ATF UC via 216-600-7665 and directed the ATF UC to "Prospect." The ATF UC asked **PAIGE** if he meant the "Spot downtown" (referring to 4225 E. 128th Street, Cleveland). **PAIGE** stated, "Yeah." **PAIGE** told the UC to call

**PAIGE** when the UC was off the exit (referring to East 9th Exit). SA Corey Miles followed ATF UC from the predetermined location to East Prospect Road. Once on Prospect Road, the ATF UC called **PAIGE** on 216-600-7665.  **PAIGE** told the ATF UC to park by Harry Buffalo (2120 E.4th, Cleveland, Ohio). It should be noted that **PAIGE** kept the ATF UC on the phone, while **PAIGE** exited 668 Euclid Ave, Cleveland OH and walked to the ATF UC's vehicle.

21. Assisting Special Agents observed **PAIGE** exit a door located at 627 Prospect. It should be noted that this door gives you access to 668 Euclid Ave, Cleveland OH. Assisting agents observed **PAIGE** walk to the ATF UC's vehicle and open the passenger side door and enter the ATF's UC vehicle.

22. Affiant avers that **PAIGE** entered ATF UC's vehicle and took the bag of suspected methamphetamine out of his coat pocket. ATF UC gave **PAIGE** the pre-recorded government funds in exchange for the bag of suspected methamphetamine. After the deal was completed, **PAIGE** told the ATF UC, "Be careful, I will see you later." The ATF UC was followed back to the predetermined location where the ATF UC handed over the just purchased half pound of methamphetamine to SA Miles. The methamphetamine was transported back to the ATF office where it weighed approximately 220 grams. The methamphetamine was placed into Cleveland Group II Vault.  The purchased methamphetamine was sent to the CCRFSL for further testing.  Upon lab examination by the Cuyahoga County Medical Examiner's Office, the substance tested positive for methamphetamine. (CCFRSL Case#2022-002282-0002).

23. Affiant avers that the suspected heroin/fentanyl and methamphetamine that was purchased on March 23, and March 29 were transported to the Cuyahoga County Regional Forensic Science Laboratory for testing by TFO Kopchak. The results are as follows:.

- March 23, 2022: 10.6 grams of suspected heroin contained: fentanyl, Schedule II, and 4-ANPP, Schedule II.

- March 29, 2022: 220 grams of suspected methamphetamine contained: methamphetamine, Schedule II

24. On March 31, 2022, ATF SA Fabrizio authored and swore to a cellular location data warrant, commonly referred to as a "ping" warrant which was signed by United States Magistrate Judge Kathleen Burke. This was to locate **PAIGE** using the location data from 216-600-7665. The warrant was written due to **PAIGE's** elusive nature and ATF being unable to locate the white Honda or **PAIGE** in any specific location. The first ping was received on April 1, 2022, at approximately 2:58 p.m. which showed **PAIGE** at 668 Euclid Ave.

25. TFO Kopchak reviewed the cellular location data and learned that **PAIGE** is most active during the evening and afternoon hours. During the daytime, **PAIGE** spends an extended amount of time at 668 Euclid Ave. During the afternoon and evening hours **PAIGE's** cellular location data reveals him making several trips to 4225 E. 128th Street, Cleveland for short durations of time. Thus, 4225 E. 128 and 668 Euclid Ave are well known and frequently accessed by **PAIGE.**

26. On April 6, 2022, ATF UC made a recorded call to **PAIGE** at approximately 9:40 p.m. ATF UC told **PAIGE** that he was just contacting him in regard to setting up another deal. **PAIGE** responded with "on the skate's side" referring to methamphetamine. ATF UC said that he would be back from Detroit in a few days, to which **PAIGE** responded again "on the skates?" ATF UC said that he wanted to talk with **PAIGE** in person about the next deal. **PAIGE** said, "just let me know."

27. On April 10, 2022, ATF UC contacted **PAIGE** and asked if he was going to be around tomorrow, **PAIGE** confirmed that he was. On April 11, 2022, at approximately 11:48 a.m., ATF UC contacted **PAIGE** and asked "1900?" in reference to paying one thousand nine-hundred dollars ($1900) for one half pound of methamphetamine.

28. On April 11, 2022, ATF UC conducted a controlled purchase of one-half pound of

9

methamphetamine using pre-recorded government funds from **PAIGE**. Cleveland Police Department (CPD) 5th District Vice Unit assisted in pre-operational surveillance of this controlled purchase. ATF UC contacted **PAIGE** via 216-600-7665 to discuss a meeting location. **PAIGE** directed the ATF UC to the Lee Harvard Shopping Plaza located at 4071 Lee Road, Cleveland, Ohio. During this time a CPD 5th District Vice Detective, acting in an undercover capacity (CPD UC) was inside the building conducting surveillance on the 4th floor of 668 Euclid Ave, Cleveland, OH. CPD UC observed **PAIGE** leaving apartment 427 at approximately 1:32 p.m. CPD UC followed **PAIGE** to the elevator while **PAIGE** was on the phone. **PAIGE** was observed holding a large brown paper bag that emitted a strong odor of marijuana. CPD UC heard **PAIGE** say to someone on the phone that he would be arriving in approximately half an hour. CPD UC then observed **PAIGE** exit the elevator and enter an underground secured parking garage attached to the rear of the 668 Euclid Ave directly to the east of Zanzibar Soul Fusion restaurant (627 E. Prospect Ave, Cleveland, OH 44115). Shortly thereafter, the white Honda was observed by surveillance units leaving the underground garage **PAIGE** was seen walking into.

29. CPD 5th District Vice observed the white Honda as it exited the underground garage. CPD 5th District Vice utilized mobile surveillance to observe the white Honda traveling Northbound on Interstate 77 toward the Lee Harvard Shopping Plaza located at 4071 Lee Rd. Cleveland, OH to meet with the ATF UC. CPD 5th District Vice was unable to continue mobile surveillance of the white Honda once off the highway due to vehicle issues.

30. Once at 4071 Lee Road, the ATF UC made a recorded call to **PAIGE** on 216-600-7665 and told **PAIGE** the UC was in the parking lot. At approximately 2:10 p.m., the white Honda was seen entering the lot of the Lee Harvard Shopping Plaza. **PAIGE** called the ATF UC and asked where he/she was located. The ATF UC told **PAIGE** that the UC was parked in the same location as during the undercover purchase conducted on March 22, 2022. **PAIGE** asked the ATF UC to follow

him to a different location because he has to get the methamphetamine from his cousin. **PAIGE** told the ATF UC to follow him to his grandmother's house. **PAIGE** stated that he would pull up next to the ATF UC and have the UC follow him. Affiant avers that the white Honda pulled next to the ATF UC vehicle and proceeded from the lot. The ATF UC followed **PAIGE** to the area of Tarkington and E.177. The ATF UC observed **PAIGE** pull up next to a white Chevrolet Tahoe bearing Ohio plate PMY-2921.

31. The ATF UC, **PAIGE,** and the white Tahoe all drove to E.175 and Tarkington area. The ATF UC observed **PAIGE** exit his vehicle and enter the white Tahoe. **PAIGE** exited the white Tahoe and came back to the ATF UC's vehicle. **PAIGE** told the UC that he has the methamphetamine in the Tahoe and needed the pre-recorded government funds ($2,000). **PAIGE** took the $ 2,000 and walked back to the Tahoe, **PAIGE** opened the rear passenger side door. The ATF UC observed **PAIGE** pulled out a large freeze size bag that appeared to be full of methamphetamine. **PAIGE** entered the Tahoe, and a few minutes later exited and then entered the ATF UC's vehicle. **PAIGE** took the large bag of methamphetamine out of his coat pocket and handed the ATF UC the bag of suspected methamphetamine.

32. After the controlled purchase was complete, the ATF UC spoke with **PAIGE** about purchasing one pound of methamphetamine. **PAIGE** stated that this would not be an issue. The ATF UC departed the area and returned to the predetermined staging area, followed by SA Fabrizio.

33. PAIGE was followed out of the area by SA Chris Seibel and SA Brian Middaugh to the area of E. Prospect Ave, adjacent to 668 Euclid Ave. At this time mobile surveillance was terminated due to a lack of assets.

34. Once the transaction was completed, the methamphetamine was brought back to the

Cleveland Group II Field Office and weighed approximately 239 grams. A NIK test was performed.[2] A review of **PAIGE's** cellphone location data corroborated law enforcement's observations during the course of the surveillance/controlled purchase. **PAIGE's** cellphone location data revealed that after mobile surveillance was terminated, **PAIGE** returned back to 668 Euclid Ave. This behavior corroborates the aforementioned method of drug traffickers separating their residences and trap locations in an effort to separate their money and illegal drugs.

35. Between April 13 and 14, 2022, ATF UC contacted **PAIGE** via text and asked for a price for one pound of methamphetamine, the following is a brief synopsis of the discussion:

- April 13, 2022, 5:43 p.m., UC: yo you get me a number
- **PAIGE**: 4000
- ATF UC: Damn it was 1900 for a half
- April 14, 2022, 8:37 a.m., UC: Yo
- **PAIGE**: Whats up
- UC: That number doesn't make any sense, how does it go up, I be better off just getting a half coming back get another
- **PAIGE**: ok

36. On April 26, 2022, the ATF UC with the assistance from the Drug Enforcement Administration (DEA) conducted a controlled purchase of one pound of methamphetamine from **PAIGE**. **PAIGE** via 216-600-7665 directed the ATF UC to a Taco Bell restaurant located at 4110 Lee Rd, Cleveland, OH 44128. Once the ATF UC arrived in the area, ATF UC contacted **PAIGE**. **PAIGE** told the ATF UC that he was driving a white Hyundai SUV and to follow him to his cousin's house. ATF UC followed **PAIGE** to Hlavin Avenue, which is perpendicular to 4225 E. 128. **PAIGE** got into the ATF UC vehicle and stated that he had two (2) pounds of methamphetamine at his apartment located at 4225 E. 128. **PAIGE** said he did not have access to it because he had an

---

[2] Affiant avers that a NIK field test was conducted of the just purchased methamphetamine. The NIK field test gave a positive test result for methamphetamine. Affiant avers that the NIK field test kit has been utilized by affiant and members of the Alcohol, Tobacco, Firearms and Explosives (ATF) and Cleveland Police Department (CPD) in the past on numerous occasions, and when said field tested substances were re-tested by the Cuyahoga County lab, the results of the NIK test have always proven to be true and accurate; said field test has never proven to be inaccurate in the experience of affiant.

argument with his girlfriend (Erica White). **PAIGE** explained that the apartment and car (the white Honda) are in his girlfriend's name, but he pays for both himself in cash. **PAIGE** directed ATF UC's attention to 12910 Hlavin Ave.  **PAIGE** told ATF UC that he (**PAIGE**) recently purchased the home for twenty thousand dollars in cash from the previous owners. **PAIGE** said this was due to the previous owner being sentenced to ten years in federal prison. **PAIGE** not only explained to the UC that he recently purchased the home, but gave specific details of the home, such that it had three bedrooms along with a brand-new roof he just had installed.  The ATF UC observed the roof and agreed that it in fact looked brand new.  SA Fabrizio looked the house up on the Cuyahoga County auditor's website. The auditor's website did not reveal the owner as **PAIGE**, but it is common behavior that drug traffickers use cash to purchase property and put it in other's name to conceal ownership. This can be corroborated due to **PAIGE's** statements and detailed description of the property to show this could be one of **PAIGE's** homes

       37.      While PAIGE was in ATF UC vehicle, **PAIGE** via 216-600-7665, told the ATF UC he needed to call his "Cousin" to bring the correct amount of methamphetamine to his location (4225 E. 128). **PAIGE** instructed the UC to drive from 12910 Hlavin Ave to 4225 E. 128 and park in front. **PAIGE** told the ATF UC that he knows everyone on the street and his "Cousin" will be at 4225 E. 128 shortly. **PAIGE** told the ATF UC he was going to take half (2,000) of the pre-recorded government funds and go inside of 4225 E. 128 and wait for his" Cousin."  Shortly after, a gray Chevrolet Malibu bearing Ohio Registration HTB4267 was observed pulling into the driveway of 4225 E. 128. **PAIGE** was observed exiting 4225 E. 128 meeting with the Malibu and then going back into 4225 E. 128. After the gray Chevrolet Malibu left the area, **PAIGE** emerged from 4225 E. 128, with the agreed upon methamphetamine. **PAIGE** the re-entered ATF UC's vehicle and gave ATF UC the large freezer bag of suspected methamphetamine in exchange for the pre-recorded government funds. **PAIGE** asked the ATF UC to drive **PAIGE** back to his car which was parked in from of 12910

Hlavin Ave. The ATF UC dropped **PAIGE** back off at his vehicle and left the area. The ATF UC was followed by SA Miles back to the predetermined staging location.

38. Once the controlled purchase was concluded the methamphetamine was brought back to the Cleveland II Field office. A NIK test was performed[3]. The methamphetamine was held by DEA at the ATF Cleveland II Field Office pending being sent out for lab testing. The methamphetamine was secured at the ATF Cleveland II drug safe and weighed approximately 416 grams.

39. ATF SA Fyabrizio spoke with the property manager from K&D management for 668 Euclid Ave who informed that the lease holder for 668 Euclid Ave Apt. 427, is in fact Erica White, who was previously mentioned as the registered owner of the white Honda. SA Fabrizio queried online law enforcement records and corroborated the fact that Erica White is in fact the lease holder 668 Euclid Ave Apt. 427 and registered owner of the white Honda. SA Fabrizio also queried **PAIGE** utilizing the same online law enforcement records and learned that **PAIGE** is also affiliated with 668 Euclid Ave Apt. 427.

40. On May 3, 2022, **PAIGE** contacted ATF UC via (216)-309-3422, a different phone number 216-600-7665, the call was recorded. **PAIGE** asked the ATF UC if they were ready for "the whole thing again", implying another pound of methamphetamine. ATF UC informed they were not. **PAIGE** stated that he did have the missing two grams of methamphetamine from the last purchase as well for the ATF UC. ATF UC asked **PAIGE** he has not answered his phone. **PAIGE** stated that his phone is dead. Call ended.

41. On May 4, 2022, at approximately 12:35am, **PAIGE** called via 216-600-7665 ATF UC in regards to purchasing more methamphetamine. **PAIGE** said that his "cousin" wanted to talk to

---

[3] Affiant avers that a NIK field test was conducted of the just purchased Methamphetamine. The NIK field test gave a positive test result for Methamphetamine. Affiant avers that the NIK field test kit has been utilized by affiant and members of the Alcohol, Tobacco, Firearms and Explosives (ATF) and Cleveland Police Department (CPD) in the past on numerous occasions, and when said field tested substances were re-tested by the Cuyahoga County lab, the results of the NIK test have always proven to be true and accurate; said field test has never proven to be inaccurate in the experience of affiant.

ATF UC. ATF UC and the cousin discussed purchasing more methamphetamine. **PAIGE's** cousin stated that he could provide the ATF UC with a pound of methamphetamine at a time. **PAIGE's** cousin said that he would facilitate all the deals. This shows that **PAIGE** has knowledge and access to larger amounts of drugs through his "cousin" who appears to be higher up in the DTO. **PAIGE's** cousin asked ATF UC to call him first thing in the morning via 216-600-7665. Call ended.

42. Affiant avers that on May 4, 2022, four federal search warrants were obtained in connection with Defendant's Drug Trafficking Operation ("DTO"). On May 5, 2022, search warrants were executed at the below-mentioned locations and/or vehicles:

- 4225 E. 128 Street, Cleveland, OH 44105
- 668 Euclid Ave Apartment 427, Cleveland, OH 44114
- 12910 Hlavin Ave, Cleveland, OH 44105
- 2015 White Honda Civic, Sedan, bearing Ohio Registration GJW6626, VIN: 2HGFB2F74FH506800

43. As relevant to this complaint, Affiant avers that on May 5, 2022, federal search warrants were executed at 4225 E. 128 Street, Cleveland OH; 668 Euclid Ave Apt. 427, Cleveland, OH, and 12910 Hlavin Ave, Cleveland OH.

44. Affiant avers that entry was made at 668 Euclid Ave Apartment 427, Cleveland, OH at approximately 6:08 a.m. Upon entry, Agents and TFOs observed a large male running to the rear of the apartment and ignoring verbal commands. The male, later confirmed to be **PAIGE**, was observed running to the rear of the apartment and throwing something out a window. **PAIGE** then began to comply with verbal commands and came to the entrance of the apartment with his hands up. Agents detained Darius **PAIGE** and his girlfriend, Erica White. Agents looked out the window **PAIGE** was seen running to and observed several small baggies of suspected narcotics below on the roof

underneath the window. Agents and TFO's recovered the suspected narcotics. **PAIGE** was advised of his Miranda rights by your Affiant in the presence of DEA TFO Orlando Almonte and DEA TFO Jason Glover, **PAIGE** stated he understood. Your Affiant asked **PAIGE** to sign ATF Form 3200.4 in agreement and understanding of his Miranda Warnings, **PAIGE** refused. **PAIGE** was advised that ATF obtained a federal search warrant for his residence, for 4225 E. 128 Street, Cleveland, OH and an additional location (12910 Hlavin Ave, Cleveland, OH) along with the aforementioned white Honda Civic bearing OH license plate GJW-6626. While your affiant and agents were at 668 Euclid Ave Apartment# 427, Cleveland, ATF agents and Task force officers were standing by to execute the search warrant at, 4225 E. 128 Street, Cleveland, OH and surveillance was being conducted at 12910 Hlavin Ave, Cleveland, OH.

45. You Affiant was made aware during the search of 668 Euclid Ave Apt. 427 a large amount of marijuana, a variety of suspected heroin, fentanyl and fentanyl analog, drug packaging materials such as plastic baggies, digital scales, blender with suspected drug residue, several sets of house keys, one apple I-phone and two prepaid cellphones. [4] All items were taken into ATF and DEA custody. The recovered suspected heroin, fentanyl, fentanyl analog and or mixture of a combination of these substances had a similar texture and color consistent with the narcotics TFO Kopchak purchased in a UC capacity from **PAIGE**. [5]

46. You Affiant was informed that no evidence was located in the White Honda Civic parked in the underground parking garage. Copies of the warrants and inventory forms were left with Erica White, the main occupant.

---

[4] It is common for drug traffickers to use multiple cellphones in furtherance of their drug trafficking crimes.

[5] The bag of suspected heroin, fentanyl, fentanyl analog, and or mixture of a combination of these substances will be sent to the laboratory for further testing. Affiant avers heroin is a schedule I controlled substance, and fentanyl is a schedule II-controlled substance. The suspected heroin, fentanyl, fentanyl analog, and or mixture of a combination of these substances was not subjected to field test as matter of officer safety.

47. While 668 Euclid Ave Apt 427 was being searched, another federal arrest warrant was being served at 4225 E. 128 Street. Agents and TFO's knocked and announced their presence, made entry and conducted an initial protective sweep of the structure. The sole occupant, Adam Johnson was detained. Johnson has a criminal history in the state of Ohio for carrying concealed weapons and drug trafficking along with federal convictions for drug trafficking.

48. Your Affiant was made aware that during the search of 4225 E.128 Street a large amount of narcotics, packaging equipment to include a steel press, steel press box, different substances commonly used for "cut", blenders with narcotic residue, bottles of acetone, several plastic containers with drug residue two firearms: one Hesse Arms 5.56cal, AR-pistol bearing serial number: P001764 and one Smith & Wesson, M&P Shield 9mm, pistol, bearing serial number: RCV1915 and two Apple I-phones.

49. Affiant avers that the items found in 4225 E. 128 Street along with which the manner they were found are all consistent with houses used to manufacture drugs, commonly referred to as "trap houses".

50. Once the 4225 E. 128 Street was deemed clear and secured, a perimeter was set around 12910 Hlavin Ave. The same Agents and TFO's the made entry to 4225 E.128 Street also made entry to 12910 Hlavin Ave. ATF Agents and TFO's made entry to 12910 Hlavin Ave and conducted a protective sweep prior to searching.

51. Your Affiant was made aware that during the course of the search several documents were located and photographed with **PAIGE's** information along with Erica White and Nakata Paige's information on them. Several two-thousand-dollar ($2000) money bands were located in the house in shoe boxes, but no cash was located.

52. Your Affiant and TFO Kopchak brought the seized keys from 668 Euclid Ave Apt. 427 to 12910 Hlavin Ave. TFO Kopchak was able to use **PAIGE's** seized keys to manipulate the locks on

17

the doors and unlock them.  Your Affiant avers that this corroborates the fact that **PAIGE** has unrestricted access to this residence.

53. SA Cory Miles, a certified Interstate Nexus Expert, inspected the seized firearms and informed your Affiant that neither firearms were made in the state of Ohio. Your Affiant avers that this demonstrates that the seized firearms traveled in interstate commerce.

## CONCLUSION

For the foregoing reasons, your Affiant submits that there is probable cause in support of a criminal complaint against Darius **PAIGE** for the following offense: Title 21 U.S.C. Sections 841(a)(1), 843(b) and 846, to wit: distributing and possessing with the intent to distribute controlled substances; use of a communication facility to facilitate a felony drug offense, and conspiracy to distribute and to possess with the intent to distribute controlled substances.

Nicola A. Fabrizio
Special Agent
Bureau of Alcohol, Tobacco, and Firearms

Sworn to via telephone after submission
by reliable electronic means.
Fed. R. Crim. P. 3, 4(d), and 4.1, on
this __06th__, May 2022.

JONATHAN D. GREENBERG
U.S. MAGISTRATE JUDGE